**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
**Norah Van Dusen**, OSB No. 180114
Email: norah@lmhlegal.com
**Sara Long**, OSB No. 224433
Email: saralong@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Rebecca J. Roe**, WSBA No. 7560
Email: roe@sgb-law.com
**Hong Jiang**, WSBA No. 51914
Email: jiang@sgb-law.com
**Benjamin Gauen**, WSBA No. 41815
Email: gauen@sgb-law.com
Schroeter Goldmark & Bender
401 Union Street, Suite 3400
Seattle, Washington 98101
Telephone: (206) 622-8000
Facsimile: (206) 682-2305
*Applications for Pro Hac Vice Forthcoming*

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **A.A.**, <br><br> Plaintiff, <br><br> vs. <br><br> **LAURIE WAGNER, JOSEPH O'LEARY, DAN BERGER, RAYMOND BYRD, and the OREGON YOUTH AUTHORITY,** | Case No. 3:25-cv-2075 <br><br> **COMPLAINT** <br><br> **Civil Rights Violation Substantive Due Process (42 U.S.C. § 1983)** <br><br> **Oregon Tort Claims Act (Or. Rev. Stat. § 30.260 *et seq*)** |

COMPLAINT - 1
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

|  |  |
|---|---|
| Defendants. | **Negligence** |
|  | **Jury Trial Demanded** |

Plaintiff A.A., by and through his attorneys, hereby alleges:

## NATURE OF ACTION

1.  This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and Or. Rev. Stat. § 30.260 by Plaintiff A.A. Plaintiff was a juvenile who was adjudicated in juvenile court in Washington County and committed to the Oregon Youth Authority ("OYA") when he was 17 years old. The OYA placed him at the MacLaren Youth Correctional Facility in Woodburn, Oregon ("MacLaren") on February 3, 2021. Beginning in June 2023, Defendant Laurie Wagner began working on the unit that Plaintiff lived on. Wagner started grooming Plaintiff for a sexual relationship within one week of her arrival. Over the course of the next six months, Wagner had sexual intercourse with Plaintiff on multiple occasions.

2.  Defendants including former OYA director Joseph O'Leary, along with key administrators Dan Berger and Raymond Byrd, failed to take reasonable measures to prevent the misconduct. The OYA supervisors' acts and failures to act enabled a toxic culture to persist and youth in custody were left vulnerable to exploitation. The Defendants' individual actions deprived Plaintiff of his fundamental right to safety, recovery, and rehabilitation.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331 and 1343 because the causes of action arise under 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiff's pendent state law claims under 28 U.S.C. § 1367.

COMPLAINT - 2
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

4. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

5. Notice of Plaintiff's claims is timely provided by the filing of this complaint.

## PARTIES

6. Plaintiff is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

7. At all relevant times, Laurie Wagner was employed as a group life coordinator by the OYA, acting under color of state law. All of the conduct alleged below was taken within the scope of her employment with the OYA. She is sued in her individual capacity.

8. At all relevant times, Joseph O'Leary was employed as the Director of the OYA, acting under color of state law. All of the conduct alleged below was taken within the scope of his employment with the OYA. He is sued in his individual capacity.

9. At all relevant times, Dan Berger was employed as the Superintendent of MacLaren, acting under color of state law. All of the conduct alleged below was taken within the scope of his employment with the OYA. He is sued in his individual capacity.

10. At all relevant times, Raymond Byrd was employed as the Chief Investigator for the OYA's Professional Standards Office, acting under color of state law. All of the conduct alleged below was taken within the scope of his employment with the OYA. He is sued in his individual capacity.

COMPLAINT - 3
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

11. The OYA is the state agency that operates MacLaren. Under the Oregon Tort Claims Act, it is subject to liability for the torts of its officers, employees, and agents acting with the scope of their employment or duties.

## GENERAL ALLEGATIONS

12. When Plaintiff was 17 years old, he was committed by the Washington County Juvenile Court to the custody of the OYA.

13. OYA placed Plaintiff at MacLaren on or around February 3, 2021.

14. Two years later, in June of 2023, Plaintiff was living on the Granite unit at MacLaren.

15. On information and belief, OYA hired Laurie Wagner as a group life coordinater in June of 2023 and assigned her to the Granite living unit.

16. On information and belief, Wagner previously worked at the Yamhill County Youth Detention Center.

17. Within one week of Wagner beginning work on the Granite living unit, she began grooming Plaintiff for a sexual relationship.

18. Given the vulnerability of the population OYA was serving and the history of youth being targeted for sexual abuse by staff at MacLaren, a supervisor exercising a reasonable amount of care would have immediately noticed and recognized Wagner's behavior toward Plaintiff as grooming.

19. Given that Wagner was a new employee working with this vulnerable population of youth, a supervisor exercising a reasonable amount of care would have been supervising Wagner's performance closely.

COMPLAINT - 4
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

20. As part of the grooming process, Wagner provided Plaintiff with contraband items, such as marijuana "dab" pens and nicotine vape pens.

21. Wagner had sexual intercourse with Plaintiff on many occasions between June and December 2023.

22. On information and belief, Wagner was let go by the OYA in December 2023 when she returned to work at the Yamhill County Youth Detention Facility.

23. As Superintendent, it was Berger's responsibility to ensure that the policies and procedures regarding investigation of sexual abuse of youth at MacLaren were followed.

24. OYA Policy I-A-10.0, "Preventing, Detecting, and Responding to Youth Sexual Abuse and Sexual Harassment," required Berger, as Superintendent of MacLaren, to designate a PREA Compliance Manager ("PCM") at MacLaren who is responsible for ensuring that responses to sexual abuse incidents follow OYA protocol and policy.

25. Upon information and belief, Berger designated himself as the PCM at MacLaren in 2019 but failed to designate a PCM in 2021 or 2022. Beginning in 2022, Alisha Goodwin took on the role as PCM.

26. Among other responsibilities, OYA Policy I-A-10.0 requires the PCM to designate a Sexual Abuse Response and Resource Team ("SARRT") to respond to incidents of sexual abuse, including sexual abuse of youth by staff at the facility.

27. OYA policy requires the SARRT to include the PCM, the youth's case coordinator, and the youth's QMHP.

28. When staff suspect that a youth is being sexually abused, the staff must notify the Superintendent, the PCM, and the Professional Standards Office ("PSO") Chief Investigator. A

COMPLAINT - 5
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

SARRT member must notify the agency's Sexual Abuse Response Resource Coordinator ("SARRC").

29. OYA Policy I-A-10.0 further requires that the youth who is the alleged victim be evaluated by a medical professional in the community and a mental health professional for crisis intervention counseling and long-term follow-up within 24 hours of the medical examination.

30. The same policy requires that the Superintendent of the facility, the PCM, or the SARRC make a qualified victim advocate available to the youth.

31. If those policies and procedures had been followed, based on the suspicion of sexual abuse, Plaintiff would have been treated as a victim and provided services for victims of sexual abuse.

32. None of the policies and procedures enacted to ensure appropriate response to youth sexual abuse and harassment were followed.

## DISCOVERY OF THE HARM

33. Wagner engaged in a pattern of conduct with Plaintiff known as "grooming" where she gained the trust of Plaintiff and led him to believe that their relationship was mutual and non-coercive.

34. Grooming is a common tactic engaged in by sex offenders who target vulnerable victims.

35. Wagner's grooming of Plaintiff began shortly after she arrived at MacLaren. It included:

    a. Showing Plaintiff favoritism and special treatment;

    b. Finding excuses to spend time alone with Plaintiff;

    c. Isolating Plaintiff from other trusted adults;

COMPLAINT - 6
(Case No. 3:25-cv-2075)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

    d.   Requesting Plaintiff keep secrets from other trusted adults;

    e.   Eroding physical boundaries with Plaintiff;

    f.   Giving gifts to Plaintiff in violation of OYA rules and regulations; and,

    g.   Giving contraband to Plaintiff in violation of OYA rules and regulations.

36. As a result of Wagner's grooming of Plaintiff, Plaintiff was not immediately aware of the coercive nature of their sexual relationship and therefore could not perceive the harm caused by Wagner's conduct.

37. Plaintiff is only now becoming aware of the coercive nature of the sexual relationship.

## SUPERVISOR LIABILITY

38. O'Leary was the Director of the OYA at the time Wagner sexually abused Plaintiff until he was relieved of his duties in March 2025.

39. Berger was the Superintendent of MacLaren at the time Wagner sexually abused Plaintiff.

40. Raymond Byrd was the Chief Investigator of the OYA's Professional Standards Office ("PSO") at the time Wagner subjected Plaintiff to sexual misconduct. He resigned from his position at the PSO in January 2025.

COMPLAINT - 7
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

### *Knowledge of History of Problems at OYA*

41. O'Leary, Byrd, and Berger were all aware that OYA has a long history of turning a blind eye to reports of staff sexually abusing youth at its facilities by failing to investigate reports of abuse, failing to properly train staff, and failing to institute or properly implement policies that would protect youth from sexual abuse by staff.

42. For example, O'Leary and Berger were both aware of the notorious case of Frank Milligan, a former employee of the OYA who is both a pedophile and a sadist. One of the youth Milligan abused, J.M., filed a lawsuit against the OYA in 2014. At that time, Berger was the Superintendent of MacLaren and O'Leary was the Deputy Director of the OYA. Among the failures that J.M. identified as leading to the abuse he suffered were:

   a. Failing to install sufficient security and monitoring equipment at MacLaren to deter the abuse of minors;

   b. Failing to implement policies and procedures to adequately investigate job applicants, particularly for those positions requiring one-on-one interaction with juveniles, for a history of or proclivity to child sex abuse;

   c. Failing to train OYA's employees to recognize warning signs and dangers of child abuse, particularly in relation to the interactions between group life coordinators and juvenile offenders; and

   d. A general culture in which the abuse of juveniles was accepted.

### *Failure to Train and Implement PREA Standards*

43. The OYA has adopted policies with respect to sexual abuse of youth that are designed to implement the PREA standards and thereby substantially reduce the risk of sexual abuse, harassment, and exploitation of youth in custody. O'Leary, Byrd, and Berger were

COMPLAINT - 8
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

responsible for ensuring OYA's compliance with the Prison Rape Elimination Act of 2003 ("PREA") and for enforcing OYA policies to implement PREA at MacLaren and/or within the PSO.

44. O'Leary, Byrd, and Berger were also aware of the requirements of the PREA Standards for Juvenile Facilities.

45. The OYA has adopted policies with respect to sexual abuse of youth that are designed to implement the PREA standards.

46. O'Leary and Berger repeatedly stated that sexual abuse of incarcerated youth is unacceptable and reiterated that OYA has a "zero tolerance" policy for sexual abuse.

47. O'Leary failed in his obligation to supervise, direct, and/or manage Byrd and/or the PSO to ensure (i) PSO staff had proper training including maintaining PREA compliance; (ii) PSO had adequate staff to complete investigations; (iii) OYA complaints were timely investigated by the PSO to completion; and (iv) OYA appropriately responded to OYA investigations, including reporting cases to the state police, disciplining staff, providing appropriate training, and/or taking other remedial actions to prevent future abuse.

48. Byrd failed in his obligations as the PSO's Chief Investigator, including ensuring that the PSO maintained PREA compliance and that OYA complaints were timely investigated to completion with investigative findings properly reported to OYA administrators and/or the state police.

49. Despite OYA's history of allowing rampant sexual abuse of youth in its care, O'Leary, Byrd, and Berger failed to ensure that OYA followed its own policies designed to protect youth such as Plaintiff from sexual abuse by staff such as Wagner.

COMPLAINT - 9
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

50. Specifically, O'Leary was responsible for ensuring that the Superintendent of MacLaren, Berger, appointed a PREA Compliance Manager ("PCM") at MacLaren to coordinate the facility's efforts to comply with PREA standards. O'Leary failed to ensure that Berger appointed a dedicated PCM at the facility as required by the PREA Standards for Juvenile Facilities.

51. Berger was responsible for ensuring MacLaren's compliance with PREA and for enacting and enforcing OYA policies to implement PREA standards at MacLaren, including appointing a PCM at MacLaren to coordinate the facility's efforts to comply with the PREA standards.

52. As the Director of the OYA, O'Leary had an obligation to ensure that staff, including Berger and Byrd, strictly adhered to PREA guidelines and OYA's own policies that were designed to prevent sexual abuse of youth by staff.

53. As the Superintendent of MacLaren, Berger had an obligation to ensure that staff at MacLaren strictly adhered to PREA guidelines and OYA's own policies that were designed to prevent sexual abuse of youth by staff, including ensuring that staff reported any suspicion of sexual abuse to the PCM.

54. From 2019 through 2022, Berger failed to appoint a dedicated PREA compliance manager at the facility as required by the PREA Standards for Juvenile Facilities. OYA's policies with respect to PREA compliance are all implemented by the PCM. By failing to appoint a PCM, Berger effectively nullified the policies.

55. By failing to ensure that the policies enacted by his own agency to prevent, investigate, and respond to sexual abuse were followed or enforced, and by ignoring credible information that staff were engaging in coercive sexual relationships with youth, O'Leary

COMPLAINT - 10
(Case No. 3:25-cv-2075)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

consciously disregarded widespread sexual abuse of youth at OYA facilities, thus creating the conditions that allowed Wagner to sexually abuse Plaintiff.

56. By failing to ensure that OYA's policies to prevent, investigate, and respond to sexual abuse were followed or enforced at MacLaren, and by ignoring credible information that staff were engaging in coercive sexual relationships with youth, Berger consciously disregarded widespread sexual abuse of youth at MacLaren, thus creating the conditions that allowed Wagner to sexually abuse Plaintiff.

### *Leadership Failed to Maintain a Functional Investigation Unit*

57. In 2018, the OYA hired Raymond Byrd to serve as the Professional Standards Office's ("PSO") Chief Investigator. The PSO is a semi-independent office within the OYA that reports directly to the OYA director and is responsible for conducting or coordinating investigations concerning youth safety and allegations of staff and non-staff misconduct. Byrd's duties included the intake, assignment, and review of OYA complaint investigations.

58. O'Leary began supervising Byrd in 2018. Between 2018 and 2025, O'Leary learned of persistent problems within the PSO, including its failure to: (i) provide adequate training, supervisory oversight, or an appropriate number of investigators, (ii) conduct timely investigations after receiving a complaint, including investigations for PREA cases, (iii) complete investigations, including those for PREA cases, (iv) provide findings or even updates to OYA leadership, (v) furnish accurate data for reporting purposes, and (vi) adequately complete related performance duties.

59. In 2021, O'Leary learned of an OYA audit that identified "significant concerns" with PREA implementation. The audit found that PREA coordinators were not reporting to the

COMPLAINT - 11
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

appropriate personnel within OYA and that Byrd was mishandling PREA investigations, with OYA administration failing to properly oversee him.

60. In 2025, the Oregon Department of Corrections (DOC) released an OYA audit that found "significant" issues within the PSO.[1] The audit determined that since 2018, the OYA failed to complete approximately 32% of investigations (i.e., approximately 733 cases) involving allegations of abuse. Further, potentially thousands of cases may have been investigated but not reviewed for appropriate disposition by the agency (i.e., corrective action or law enforcement referral).[2]

61. As of March 13, 2025, the audit identified over 3,400 cases with unknown adjudication.[3]

62. Upon information and belief, Byrd informed the auditors that he did not review the office's investigation management database in his more than six years as a chief investigator because, in part, he "did not have the time to do this part of his management duties." The audit also discovered that several current and former staff reported to Byrd and OYA leadership a "significant concern that the safety of the youth was at risk".[4]

63. In January 2025, Byrd resigned from his PSO Chief Investigator position after the DOC completed this internal OYA audit.[5]

64. On March 12, 2025, Oregon Governor Tina Kotek fired O'Leary.[6]

---

[1] https://www.centraloregondaily.com/news/regional/oregon-youth-authority-investigator-cases-lapse/article_881b7e9a-006a-11f0-86fa-27b9ce1acb0a.html
[2] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 4 (Mar. 13, 2025). Investigator: Travis Hampton, Investigator, Chief Human Resources Office.
[3] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 4.
[4] https://www.statesmanjournal.com/story/news/local/oregon/2025/03/13/audit-oregon-youth-authority-investigator-failed-review-cases/82369073007/
[5] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 4.
[6] https://www.statesmanjournal.com/story/news/local/oregon/2025/03/13/oregon-youth-authority-director-joe-oleary-fired/82380875007/; Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 6.

COMPLAINT - 12
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

65. On March 13, 2025, Oregon's Department of Administrative Services ("DAS") released an Investigation Report (DAS Investigation Report) regarding O'Leary and Byrd and allegations of mismanagement and governmental misconduct at the OYA.

66. The DAS Investigation Report uncovered evidence that during the DOC audit, "Several current and past OYA employees of the PSO allegedly reported the referenced problems with the youth cases to OYA administrators (past and present). These reports were allegedly met with an apathetic or passive response to the associated safety concerns of youth in custody."[7]

67. The DAS investigator interviewed a former OYA employee who worked at the agency for eighteen years and stated that O'Leary only cared about PREA or PSO when issues were making the news and he became concerned with "what's going to get us on the front page." Otherwise, O'Leary had an "apparent lack of interest." Moreover, this employee reported that O'Leary and other executive leadership would tell staff not to communicate in writing on sensitive issues so a public record could not be created. O'Leary wanted to offer plausible deniability to executive staff.[8]

68. As part of the DAS investigation, a different OYA former staffer was asked whether issues with the PSO impacted youth and staff safety. The staffer replied, "Yes it did" and "There's no other way to answer that question." This staffer added, "The kids deserve to be safe."[9]

69. The DAS Investigation Report sustained findings that O'Leary engaged in improper governmental conduct by his inability or unwillingness to appropriately manage the

---

[7] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 7.
[8] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 8.
[9] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 17.

COMPLAINT - 13
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

agency's Professional Standards Office. This conduct contributed to the inefficient operations of the agency and undermined the state's ability to fulfill its public mission to youth and staff.[10]

70. The DAS Investigation Report also sustained findings that Byrd engaged in improper governmental conduct by his inability or unwillingness to appropriately manage the agency's PSO. This conduct contributed to the inefficient operations of the agency and undermined the state's ability to fulfill its public mission to youth and staff.[11]

71. The DAS Investigation Report concluded with the finding that "[t]he systemic failure to appropriately manage Byrd and PSO's operations created a safety risk to youth and staff, along with undermining the credibility of the agency's efforts to supply accountability for misconduct."[12]

72. By failing to adequately supervise Byrd and the PSO, including by ignoring reports that the PSO failed to timely or adequately investigate hundreds of complaints made to PSO, O'Leary failed to ensure the safety of youth in the care of the agency and consciously disregarded widespread sexual abuse of youth at OYA facilities, thus creating the conditions that allowed Wagner to sexually abuse Plaintiff.

73. By failing to ensure reports of sexual abuse were timely investigated and received an appropriate response, Byrd consciously disregarded widespread sexual abuse of youth at OYA facilities, thus creating the conditions that the allowed Wagner to sexually abuse Plaintiff.

---

[10] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 31.
[11] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 32.
[12] Oregon Dep't of Admin. Servs., Investigation Report, Case No. 123520 at 32.

COMPLAINT - 14
(Case No. 3:25-cv-2075)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

*Failure to Stop Contraband*

74. Upon information and belief, at the time that Wagner sexually abused Plaintiff, it was widely known at MacLaren that multiple staff were engaging in sexually coercive relationships with youth and that staff were furnishing contraband, such as marijuana "dab" pens, to youth as part of the grooming process.

75. Staff were able to smuggle contraband into MacLaren because their persons and belongings were not searched upon entering the facility.

76. Berger failed to ensure that MacLaren searched staff at the entry point to prevent the flow of contraband from staff to youth within the facility.

*Failure to Effectively Monitor Staff*

77. Upon information and belief, at the time Wagner sexually abused Plaintiff, it was widely known at MacLaren that multiple staff spent time alone with youth for the purpose of sexually abusing such youth and that numerous "blind spots" existed in MacLaren's video surveillance system that allowed staff to be alone with youth unmonitored, thus creating ideal conditions for staff to sexually abuse youth.

78. Wagner took advantage of these "blind spots" by purposely engaging in coercive sexual relations with Plaintiff in areas unmonitored by video surveillance.

79. As Superintendent, Berger was responsible for addressing these conditions and preventing staff from accessing youth unmonitored.

**FIRST CLAIM FOR RELIEF**
**(Substantive Due Process – Violation of the Fourteenth Amendment – 42 U.S.C. § 1983)**
**(Against Defendants Wagner, O'Leary, Byrd, and Berger)**

80. All Defendants were employed by the OYA and acting under color of state law.

COMPLAINT - 15
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

*Defendant Wagner*

81. Plaintiff was in custody at MacLaren at the time of his sexual abuse.

82. Defendant's repeated sexual abuse of Plaintiff was not related to any legitimate government objective.

83. Defendant's repeated sexual abuse of Plaintiff caused him harm independent of and/or in excess to the inherent discomforts of confinement.

84. Defendant repeatedly subjected Plaintiff to sexual abuse for her own sexual gratification.

85. The repeated sexual abuse constituted a substantial departure from professional judgment, practice, or standards.

86. Defendant's repeated sexual abuse of Plaintiff violated his right to bodily integrity. Defendant's repeated sexual abuse of Plaintiff—a vulnerable, confined young person—constitutes egregious and outrageous behavior that shocks the conscience.

87. Defendant failed to provide Plaintiff with reasonable safety while confined at the OYA by repeatedly subjecting Plaintiff to sexual abuse.

*Defendants Berger, Byrd, and O'Leary*

88. Through long-standing failure to take reasonable steps to prevent sexual misconduct toward youth by staff, Defendants created the conditions under which sexual misconduct and exploitation from Wagner was possible. These failures, as outlined above, included failing to investigate and discipline complaints of staff misconduct and failing to take steps to monitor staff contact with youth.

89. Given the known history of abuse of youth confined at MacLaren, Defendants' failure to act in mitigating known risks was objectively unreasonable and demonstrated deliberate

COMPLAINT - 16
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

indifference to Plaintiff's right to be free from sexual misconduct and exploitation while confined at MacLaren.

90. Defendants' failures as described above constitute egregious and outrageous behavior that shocks the conscience.

## SECOND CLAIM FOR RELIEF
### (Negligence under Oregon Tort Claims Act)
### (Against Defendant OYA)

91. The OYA, acting through its agent and/or employees, was negligent and at fault in one or more of the following ways:

   a. Failing to ensure that staff were adequately supervised and monitored in their contact with youth, and that security cameras captured areas where staff could be alone with youth;

   b. Failing to ensure staff adequately monitored the security cameras already installed to detect the warning signs of sexual misconduct, as detailed in OYA policies, and to ensure that staff, such as Wagner, were not spending time alone with youth;

   c. Failing to train, enforce, or implement PREA standards and OYA policies designed to detect, prevent, stop, and/or investigate sexual misconduct of youth by staff;

   d. Failing to appoint a dedicated PREA compliance manager at MacLaren to ensure compliance with PREA standards, and train the PSO Chief Investigator and PSO staff on PREA standards;

   e. Failing to ensure that staff at MacLaren strictly adhered to PREA guidelines and OYA policies, including staff reporting any suspicion of sexual misconduct;

COMPLAINT - 17
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

    f. Ignoring credible information that staff, including Wagner, subjected youth to sexual misconduct and failing to investigate such reports in accordance with PREA standards and OYA policy;

    g. Failing to complete investigations so that complaints could reach adjudication and findings could be reported or disclosed to OYA leadership to ensure proper discipline (including reporting to law enforcement), training, and/or remediation;

    h. Failing to report unethical conduct, mismanagement, and/or malfeasance through proper reporting channels; and

    i. Failing to address the rampant flow of contraband smuggled into the facility by staff through commonsense measures such as mandating searches of staff at all entry points and properly investigating any suspicion that staff, such as Wagner, were furnishing contraband to youth within the facility.

92. The above acts and omissions not only failed to prevent the known risk of staff engaging in sexual misconduct with youth, but actively allowed such misconduct to occur, thereby directly causing harm to Plaintiff.

## DAMAGES

As a direct and proximate result of the conduct of the Defendants, Plaintiff suffered economic and noneconomic damages, including:

    a. Mental and emotional injury; and

    b. Loss of Plaintiff's civil right to be free from sexual contact by staff members while he was both a prisoner and an adjudicated youth at a youth correctional facility.

COMPLAINT - 18
(Case No. 3:25-cv-2075)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in his favor, and against Defendants, as follows:

a.  Grant Plaintiff compensatory damages against Defendants in an amount to be determined at trial;

b.  Award Plaintiff reasonable costs, expenses, and attorney's fees; and

c.  Grant Plaintiff such further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**DATED** this 6th day of November, 2025.

> By:  s/ Jesse Merrithew
> **Jesse Merrithew**, OSB No. 074564
> **Rebecca J. Roe**, WSBA No. 7560
> **Hong Jiang**, WSBA No. 51914
> **Benjamin Gauen**, WSBA No. 41815
> **Norah Van Dusen**, OSB No. 180114
> **Sara Long**, OSB No. 224433
> Of Attorneys for A.A.

COMPLAINT - 19
(Case No. 3:25-cv-2075)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092